Mr. Justice James
delivered the opinion of the Court.
The first of these cases is a writ of certiorari for review of the proceedings of the authorities of the District in widening Columbia Road from Boundary street to 19th street extended.
The petition, originally filed by Stephen P. Quackenbush, ancestor of the present party, states the following case:
In the spring of 1887, the Commissioners of this District published an advertisement calling upon all persons who might have objections to a proposed alteration of the road to present them. Quackenbush appeared and claimed damages. The Márshal of this District summoned a jury and served notice on him that it would meet on the 12th of May, 1887. On that day other owners of land adjoining Columbia Road filed a bill in equity asking that the Commissioners be enjoined from taking further action for such widening under the then pending proceedings, and an injunction pendente lite was granted. That injunction remains in force, the case not having yet come to hearing. But, notwithstanding the petitioner’s pending objection and claim, and that injunction, the Commissioners and the Marshal proceeded in October, 1888, to widen Columbia Road as orginally designed, and a jury assessed damages therefor in favor of Mrs. Stoddart, Mr. Phelps, and the heirs of Blake. No notice of the time and place of meeting of the jury was sént to the petitioner by the Marshal, and no damages were assessed in his favor; nor did he have any knowledge of any advertisement of notice, or of *306 the meeting of this second jury, until after the verdict. The Commissioners have taken possession of, and opened to public travel, as part of a public highway, a strip of petitioner’s land 16 feet 5 inches wide, which is worth $3,000.
The return is to the following effect: A new advertisement of notice was published in these words: “Office of the Commissioners District of Columbia, Washington, July 23rd, 1888. Deeming it conducive to the public interest to widen the Columbia Road from Boundary St. to 19th St. extended, from thirty-three feet to sixty-six feet, the Commissioners of the District of Columbia have had the route surveyed and a plat thereof prepared and filed in their office. In compliance with the requirement of law notice is hereby given of the proposed widening of the highway aforesaid, and all persons who have objections to present thereto are called upon to attend at this office, at 12 o’clock m., on Tuesday, the 14th day of August, 1888, at which time the Commissioners will give hearing to all persons in interest. ’ ’ This was signed by the several Commissioners.
Objections and claims for damages were presented by several persons, and thereupon the Commissioners directed the Marshal “to summon a jury in the case of the objecting owners.” The jury were accordingly sworn only to assess damages for lands belonging to Mrs. Stoddart, Mr. Phelps and the Blake heirs, and damages were in fact assessed only to those three owners. ■ Thereupon the Commissioners at once, and without any inquiry of damages as to the petitioner or any other owners' than those mentioned, declared Columbia Road, as thus widened, to be a public road and opened as a highway.
We are of opinion that the proceedings in this case were in several respects illegal. In the first place, notice of the proposed alterations of Columbia Road was not given by the advertisment shown in the return. In the next place, the jury did not consider and act upon the case of every owner whose property was taken in widening the road, as they were plainly required by the statute to do.
These concluions are based upon the following provisions *307 of the Revised Statutes of this District: “Sec. 253. The proper authorities shall cause notice to be given, by advertisement twice a week for three weeks, of the proposed, opening of a new road, or of the alteration of an existing one, calling upon all persons who may have any objections thereto, to present them to such authorities at their next regular meeeting, when, if any objections are made, such objections shall be heard.
“Sec. 255. If no objection to opening or altering a road is made by the owners of the land through which it must pass, after such notice, it shall be taken for granted that no damages are or will be claimed, and the road may be recorded -and opened, and shall then be a public road or highway.
“Sec. 257. If any owner of land shall object and claim damages, and the amount cannot be agreed upon, the proper authorities shall direct the Marshal of the District to summon a jury of seven judicious, disinterested men, not related to any party interested, to be and appear on the premises, on a day specified, tq assess the damages, if any, which each owner of land through which the road is to pass may sustain by reason thereof.
“Sec. 258. It shall be the duty of the Marshal, upon receiving the order mentioned in the preceding section; to give the owners not less than ten days’ notice of the time and place of the meeting of the jury to assess the damages.
“Sec. 260. The Marshal shall summon the jury and administer an oath or affirmation to them that they will, without favor or partiality to any one, to the best of their judgment, decide what damages, if any, each owner may sustain by reason of running the road through his premises.”
We have to consider, first, the sufficiency of the notice.
The provisions of this statute are to be read in the light of the constitutional provision which forbids even the whole nation to take for its own use the property of an individual without just compensation for -it. His right to retain that property, or to have its equivalent, is thus surrounded with an inviolable character. A statute which should disregard *308 that right would itself be a nullity and no statute is to be construed to intend any jeopardy or diminution of it unless such intention be too plain to be ignored. On the other hand the legislature is to be understood to require the most complete observance of provisions for an opportunity to secure just compensation, especially because they are made for the-protection of the individual owner in a proceeding which is, in contemplation of law, wholly in invitmn. From this point of view it is plain that the statute before us intends the advertised notice to be effective as a protective warning; and, therefore, intends that it shall be such a notice as shall inform the owner of the land that it is his land that is about to be taken for public use. Clearly, a notice which merely announces that Columbia Road is to be so altered as to be of twice its former width, and that a plat showing the proposed alteration — in other words, showing whose land is to be taken — has been deposited in a certain office, does not comply with this requirement. The owner is not informed by the notice itself whether the additional width is to be taken wholly from lands bordering on one side of the road, or partly from lands bordering on each side. From the mere reading of such a notice a bordering owner could not learn that the proposed alteration would touch his land. And here we desire to lay emphasis on this intention of the statute that the notice itself shall convey to the land owner the information and the warning to which he is entitled. A statute which proposes to operate in invitmn does not tend to charge him with any duty to aid such a proceeding by going about to inquire whether it is his land the authorities were talking about; in other words, with a duty to give himself notice. But this active duty is precisely what the form adopted by the Commissioners proposed to shift upon his shoulders. In our qpinion, such a method of giving notice would be likely sometimes to catch a land owner napping, and, however innocent its intent might be, would have the actual effect of a device to avoid his expectation of just compensation by taking advantage of his inertia or of his want of *309 training in affairs. Both results are abhorrent to the principle which inspired the Fifth Amendment of the Constitution.
We are aware that a less exacting construction of the duty to give the private owner notice has been adopted by some courts; and have only to say that we decline to accept those decisions as a guide,- inasmuch as they seem to us to have overlooked a controlling principle.
We have next to consider the limitation of damages to the objecting owners.
This statute contemplates two courses of action; one in which the authorities may at once declare a road to be open, without the intervention of an assessing jury; the other in which they cannot expropriate the owner until a jury shall have ascertained a just compensation for his land. Section 255 provides, that when “no objection to opening or altering a road is made by the owners of the land through which it must pass, after such notice” — that is to say, after the kind of notice which the law actually required — the road might at once be declared open. But the next section provides that “if any owner of land shall object and claim damages” — in other words, if any owner shall make occasion for a jury— then a jury shall be summoned.- The question is, what is the function of the jury in that case? For what purpose does the statute say it is there when it is once required to intervene? The literal direction of the act is that it shall, in case of a claim by any owner, be summoned “to assess the damages, if any, which each owner of land through which the road is to pass may sustain by reason thereof.” The manifest spirit of this provision is, that when once the process of ascertaining just compensation has begun, the separate power .of the Commissioners to declare the road open, for any purpose or to any extent, without ascertainment of damages by a jury is at an end, and that all owners shall be put on an equality and treated alike. And to that effect is the letter of the law; the jury is directed by it, upon a claim for damages by an owner, to assess the damages sustained by “ each owner of land through which the road is to pass.”
*310 It is urged, on the part of the authorities, that this prpvision must be read as if it had said “ objecting owners;” and nothing less than such an alteration of its language would sustain their action in this case. No such qualification is expressed in the statute, and we see nothing in the context, or in the constitution, that would justify us in putting it there.
It is manifest that the' contention that the Commissioners are authorized to direct the jury to ignore particular owners who do not appear and claim damages, must stand upon one or the other of two theories; namely, upon the theory that their failure to appear, amounts to an assent to the taking without compensation, or upon the theory that an owner loses his claim by default. Assent is not implied in a proceeding to take in invitum, and this proceeding was declared to be of that character by the very act of advertising notice, and still more distinctly by the terms of that notice. And as to the kind of conduct which should be. held to manifest consent, it is not to be supposed, in view of the spirit of the constitutional guaranty of the private right, that the legislature intended that it should be considered waived by anything less than an affirmative act of abandonment, or by an act which amounted to a voluntary gift. Morever, this very statute indicates the manner of consenting which shall constitute such a donation. Section 256 provides that: “ The notice required to be given by section 253 need not be given when all the parties interested are agreed, and all roads laid out under such agreement, without notice being given, are lawful roads.” What shall constitute a giving or dedication of land in such a case is not open to question. Whether the agreement must be in writing or may be in parol and proven by acts in pais, the giving or dedication must be by affirmative act and not by submission to the acts of another. It can hardly be supposed that another part of the same statute intended that mere non-action in a proceeding in invitum should be construed to be an affirmative gift or dedication. Finally, as to the theory of default, we cannot suppose that the Regislalature intended that this constitutional right of an individual owner to have just compensation when his property is taken *311 for public use, should be subjected to the technical rules of common law pleading in a common law action. It might be that the right to compensation would be lost by intentional abandonment of claim, but that it should be forfeited by mere default is a conception which is inconsistent with the solemnity with which that right has been guaranteed.
We are of opinion that ihe proceedings by which the property of the petitioners has been taken were illegal, and that they must be vacated.
The second case is a bill for an injunction restraining the defendant from laying out upon complainant’s land a proposed highway for public use. The case stated therein is as follows:
The complainant owns lots 56 and 57 in a tract of land known as McDaughlin’s Subdivision of Prospect' Hill, containing each 7,470 square feet of land, as recorded in the surveyor’s office. When said subdivision was admitted to record a street fifty-nine feet and fifty-nine hundredths wide, called Gales avenue, was dedicated to the public as a common highway, and as such has ever been used by the public. Some time in the year 1890 there was filed in the office of ■ the Commissioners. of the District a request asking for the opening of T street north, between Dincoln avenue and Second street northeast, across the said lots, and in October of the same year the Commissioners caused an advertisement, in the following words, to be published in The Washington Post: “Office of the Commissioners District of Columbia, Washington, October 1, 1890. Deeming it conducive to the public interest to open T street from Dincoln avenue to Second street northeast, the Commissioners of the District of Columbia have had the route surveyed and a plat thereof prepared and filed in this office. In compliance with the requirements of law, notice is hereby given of the proposed opening of the highway aforesaid, and that all persons who have objections thereto to present are called upon to attend at this office, at 2 o’clock p. m., on Tuesday, the 28th day of October, 1890, at which time the Commissioners will give *312 hearing to all persons in interest. By order of the Commissioners of the District of Columbia. John W. Douglass, J. W. Ross, H. M. Robert, Comrs. D. C.”
On the 19th of November, 1890, one Montgomery, an owner of land on the line of said extension, filed an objection, and thereupon the Commissioners directed the Marshal to summon a jury to assess damages. The Marshal notified only three of the thirty owners thrtmgh whose land the proposed extension would pass, to appear before the jury, and the jury assessed damages only to the three persons notified. The Commissioners, being dissatisfied with this award, caused a second jury to be summoned, and a second assessment was made; whereupon the extension was declared to be opened as a public road.
These averments are admitted to be true by the answer of the Commissioners.
As this case was heard with Quackenbush vs. The District, and the same questions are presented in both, we need not repeat here the argument which governed our conclusions in' that case. It is worth while, however, to note an argument ab inconvenitnti which is stated in the form of an averment in the answer. It is there alleged that, if the construction insisted on by the complainant, and now conceded by the court, should prevail, the statute-itself would be virtually’ nullified.
We can only understand this to be a suggestion that the public cannot afford to take land for streets and roads on the terms which would result from that construction of the. law; and that the alleged practice of the last quarter of a century should be sustained because it works an economy in the taking of private property for public use. Such a suggestion implies that this economy is to be accomplished by an early cutting off of claims, in case an owner, who might not be willing, and might not intend, to give his property without compensation, should be slow in demanding it.
We suppose there is no public policy which requires the executive, much less the judicial authorities, to be astute to *313 diminish the chances of a demonstrable private right; especially of a right which the people have been so careful to guaranty by their fundamental law. The rights of the individual are all times, even with the best protection, in jeopardy enough from combined private interests; and even public power has a tendency to disregard them. It was just because of the known readiness of communities to satisfy their convenience at the cost of the individual, that this guaranty was provided. We are not left to infer its meaning and temper from this single line of the fifth amendment. An intense estimate of private right had been a tradition of the race from a time even beyond Magna Charta, Blackstone, who well knew the traditions of Englishmen, said, a quarter of a century before this amendment was made:
“So great, moreover, is the regard of the law for private property, that it will not authorize the least violation of it; no, not even for the general good of the whole community. If a new road, for instance, were to be made through the grounds of a private person, it might perhaps ,be extensively beneficial to the public; but the law permits no man, or set of men, to do this without consent of the owner of the .land. In vain may it be urged that the good of the individual ought to yield to that of the community, for it would be dangerous to allow any private man, or even any public tribunal, to be judge of this common good, and to decide whether it be expedient or no. Besides, the public good is in nothing more essentially interested than in the protection of every individual's private rights, as modified by the nvunicipal law. In this and similar cases the Eegislature alone can, and indeed frequently does, interpose, and compel the individual to acquiesce. But how does it interpose and compel? Not by absolutely stripping the subject of his property in an arbitrary manner, but by giving him a full indemnification and equivalent for the injury thereby sustained. The ptiblic is now considered as an individual, treating with an individual for an exchange. All that the Eegislature does is to oblige the owner to alienate his possessions for a reasonable price; and even this is an exertion of power, which the Eegislature in *314 dulges with caution, and which nothing but the legislature can perforin.” i Bl. Com., 139.
It is to be supposed that when they embodied their ancient tradition in their constitution, this people intended to alter the relations of private right and public benefit. It was not alone the former that they considered. As they had said in the preamble to that instrument, they were engaged in providing for “the general welfare,” and this protection of private property was understood by them to be one of the means of promoting that welfare. They knew, as well as Blackstone did, that, “the public good is in nothing more interested than in the protection of every individual’s private rights, as modified by the municipal law;” and in thus securing “every individual’s private rights,” they substantially affirmed that the general welfare and true public policy requires that communities shall make compensation for what they take, and that they shall not evade that obligation by any construction.

The decree of injunction is affirmed.